UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KELLY GUERRERO,<br>    Plaintiff(s),<br>v.<br>VINCENT NEIL WHARTON,<br>    Defendant(s). | Case No.: 2:16-cv-01667-GMN-NJK<br>**REPORT AND RECOMMENDATION**<br>[Docket No. 116] |

Attorney James Kohl has withdrawn as Defendant's counsel in this case. Docket No. 113. Pending before the Court is Mr. Kohl's motion to foreclose on an attorney lien. Docket No. 116. Defendant filed a response in opposition, and Mr. Kohl filed a reply. Docket Nos. 121, 123. The motion is properly resolved without a hearing. *See* Local Rule 78-1.

For the reasons explained below, the undersigned **RECOMMENDS** that the motion be **GRANTED** in part and that Mr. Kohl's fees be awarded in the amount of $148,962.50 and his costs be awarded in the amount of $21,207.06.

**I.    BACKGROUND**

Plaintiff alleges that Defendant violently attacked her at the Aria Casino. *See* Am. Compl. (Docket No. 18) at ¶ 8.[1] In particular, Plaintiff alleges that Defendant unexpectedly grabbed her by the hair from behind and yanked her down to the pavement on her back. *Id.* Plaintiff alleges

---

[1] Defendant pled guilty to misdemeanor charges arising out of that incident. *See, e.g.*, Docket No. 24 at 3.

1

that Defendant appeared at that time to be under the influence of drugs or alcohol. *See id.* Plaintiff brought suit invoking this Court's diversity jurisdiction, suing Defendant for (1) assault and battery, and (2) intentional infliction of emotional distress. *See id.* at ¶¶ 1, 12-20.

Mr. Kohl moved to withdraw as Defendant's counsel in this case, citing a failure by Defendant to pay fees owed. *See* Docket No. 101. That motion was granted. Docket No. 113. Mr. Kohl subsequently sought to foreclose on his retaining lien[2] in the amount of $187,364 for work performed in this case. *See* Docket No. 116. That is the motion currently before the Court.

## II.     MAGISTRATE JUDGE AUTHORITY

Before turning to the substance of the pending motion, the Court first evaluates its authority to decide the matter. The authority of the undersigned magistrate judge is derived from 28 U.S.C. § 636, which generally provides magistrate judges with the authority to "hear and determine" non-dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). By contrast, dispositive matters are sometimes referred to magistrate judges, but in those circumstances a magistrate judge submits a recommendation to the assigned district judge that is subject to the district judge's *de novo* review. *See* 28 U.S.C. § 636(b)(1)(B); *see also CMKM Diamonds*, 729 F.3d at 1259-60. Section 636 specifically enumerates eight different types of matters to be treated as "dispositive." *See* 28 U.S.C. § 636(b)(1)(A)-(B). When a matter falls outside of those expressly enumerated as dispositive, the Ninth Circuit has adopted a functional approach of looking to the nature and effect of the issued ruling to determine whether the underlying matter should be considered dispositive or non-dispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).

This matter involves a determination of a request to foreclose on an attorney's retaining lien, which in turn requires a determination of the fees owed by Defendant to his attorney and then entry of judgment in that amount.[3] Such a motion is not one of the motions enumerated in Section

---

[2] There are different types of attorney liens. A retaining lien attaches to the client's file or other property left in the attorney's possession until the Court adjudicates the rights of the attorney, client, or other parties. N.R.S. 18.015(4)(b).

[3] The undersigned has not identified controlling Ninth Circuit authority addressing whether it is within the authority of a magistrate judge to decide a pretrial request to foreclose on an attorney's lien, and the case law on the issue is not consistent. *See Sutton v. N.Y. City Transit*

2

636 as being dispositive, so the undersigned will evaluate its nature and effect to determine whether its resolution is within a magistrate judge's authority. As a general matter, magistrate judges have the authority to decide a request for attorneys' fees arising out of a distinct pretrial event, such as attorneys' fees arising out of a discovery dispute. *See Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). On the other hand, case-wide attorneys' fees determined in relation to entry of judgment must be treated as a dispositive matter beyond a magistrate judge's authority. *See* Fed. R. Civ. P. 54(d)(2)(D). Similarly with respect to foreclosing on an attorney lien, resolution of that motion "may result in dispositive rulings as between the attorney and client, even if it has no bearing on the dispositive issues in the underlying litigation." *Montgomery v. eTreppid Techs., LLC*, 2008 WL 11401772, at *4 (D. Nev. Sept. 22, 2008). As a result, courts have often taken a cautious approach and treated such a motion as being dispositive in nature. *See id.*; *see also Holcombe v. U.S. Airways Grp., Inc.*, 2017 WL 10084142, at *9 (E.D.N.Y. Aug. 4, 2017); *Guardian Life Ins. Co. of Am. v. Wilds*, 2014 WL 5293706, at *2 n.2 (D. Colo. Oct. 16, 2014).

In light of the above, the undersigned will treat the motion as being dispositive in nature and will issue a report and recommendation to the assigned district judge.

## III.   ENTITLEMENT TO RELIEF

As a threshold matter, Defendant disputes whether Mr. Kohl is entitled to a judgment on his retaining lien. In particular, Defendant argues that the Court lacks subject matter jurisdiction over that matter, that the retaining lien cannot be reduced to judgment, and that relief is unwarranted because the amount owed is disputed. *See* Resp. at 9-12. As Mr. Kohl's papers make clear, however, none of Defendant's arguments is persuasive.

First, district courts have ancillary jurisdiction over fee disputes generated by an attorney's withdrawal. *See, e.g.*, *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991). "Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction." *Federal Sav. &*

---

*Auth.*, 462 F.3d 157, 159 n.2 (2d Cir. 2006). Some of the cases discussed herein involve other types of attorney liens, but it does not appear that the type of lien at issue impacts a magistrate judge's authority to resolve it and set fees.

*Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004) (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 919 (10th Cir. 1982)). As such, while this fee dispute is not a central component to the claims brought in this case, it is a matter well within the Court's jurisdiction to resolve.

Second, the state's law in which a federal court sits governs resolution of an attorney lien. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (federal courts resolve attorney liens by applying state law). Nevada statute allows for a retaining lien by an attorney for the fees owed to that attorney by his client. *See* N.R.S. 18.015(4)(b). That statutory scheme was amended in 2013 to make clear that a retaining lien is not passive in nature, and that judgment may be sought from the Court in "any civil action." N.R.S. 18.015(1)(b); *see also Fredianelli v. Price*, 402 P.3d 1254, 1256 (Nev. 2017). Such relief may be sought by the filing of a motion for adjudication and enforcement of the lien. *See* N.R.S. 18.015(6). Defendant's reliance on case law predating the 2013 amendments is not persuasive. *Compare* Resp. at 11-12 *with Fredianelli*, 402 P.3d at 1256 (concluding that the "passive" lien discussion in *Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 216 P. 527 (Nev. 2009) no longer applies to retaining liens pursuant to N.R.S. 18.015). As such, it is now settled law that retaining liens are not "passive" in nature and may be reduced to judgment.

Third, Defendant argues that reducing those fees to a judgment is not appropriate because he contests the reasonableness of the fees being sought. Resp. at 9. No legal authority is presented that a dispute as to the amount of fees is a proper ground to deny those fees outright. To the contrary, the governing statutory scheme provides that, in the event of a disagreement as to the amount of fees owed, the lien "is for a reasonable fee for the services" performed by the attorney. N.R.S. 18.015(2). As such, disagreement as to the amount of fees owed is not grounds to deny Mr. Kohl's motion and, instead, the Court will set a reasonable fee based on the work performed.

In light of the above, the undersigned will recommend that Mr. Kohl's lien be reduced to judgment.[4]

---

[4] Defendant does not challenge that the lien was properly perfected, *see* N.R.S. 18.015(3), and the Court finds that it has been perfected.

4

## IV. AMOUNT OF FEES TO AWARD

Having determined that Mr. Kohl is entitled to relief generally, the undersigned turns to the amount Defendant owes him that should be included in judgment. Federal courts sitting in diversity apply state law in calculating reasonable attorneys' fees. *Mangold v. Cal. Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The Nevada statutory scheme limits recovery on a retaining lien to a "reasonable fee for the services which the attorney has rendered for the client." N.R.S. 10.105(2). In Nevada, "the method upon which a reasonable fee is determined is subject to the discretion of the court," which "is tempered only by reason and fairness." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005) (quoting *University of Nevada v. Tarkanian*, 879 P.2d 1180, 1188, 1186 (Nev. 1994)). One permissible method of calculation is the lodestar approach, which involves multiplying "the number of hours reasonably spent on the case by a reasonable hourly rate." *See, e.g.*, *Crusher Designs, LLC v. Atlas Copco Powercrusher GmbH*, 2015 WL 6163443, at *1 (D. Nev. Oct. 20, 2015). Nevada law also requires courts to consider the qualities of the advocate, the character of the work done, the work actually performed by the lawyer, and the result. *See, e.g.*, *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 213 (Nev. 1991) (citing *Brunzell v. Golden Gate National Bank*, 445 P.2d 31, 33 (Nev. 1969)).

### A. REASONABLENESS OF HOURS EXPENDED

The Court "has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court] will defer to its determination . . . regarding the reasonableness of the hours claimed by the [movant]." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th Cir. 2010) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). In reviewing the hours claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) ("the Court must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently" spent). The reasonableness of hours expended depends on the specific circumstances of each case. *Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

As a threshold matter, the undersigned notes that the motion seeks to recover for the time spent by five different attorneys: Mr. Kohl, Robert Hernquist, Jason Weiland, Jonathon Fountain, and Alex Villamar. *See* Kohl Decl. at ¶ 7. The overwhelming majority of the time billed in this case was for work performed by Mr. Kohl. Mr. Herndon spent .3 hours reviewing and editing an expert rebuttal disclosure. *See* Docket No. 116 at 31. Mr. Weiland spent 1.9 hours researching and beginning a motion to compel that was then completed by Mr. Kohl. *See id.* at 30. Mr. Fountain spent .3 hours discussing an unspecified topic with Mr. Kohl. *See id.* Given Mr. Kohl's primary role in conducting this litigation on Defendant's behalf, it is unclear why any of the above time was necessary and the undersigned will exclude it from the lodestar. *Cf. Aevoe Corp. v. AE Tech Co.*, 2013 WL 5324787, at *5 (D. Nev. Sept. 20, 2013). With respect to Mr. Villamar, he spent 2.4 hours preparing for and covering a deposition that Mr. Kohl presumably could not attend, *see* Docket No. 116 at 26 (time expended in relation to that deposition, including conveying the results afterward to Mr. Kohl), and the undersigned will include that time in the lodestar.[5]

As to the reasonableness of the remaining hours, Defendant points to various examples in the billing records that "seem[] to be exorbitant." *See* Resp. at 6.[6] Mr. Kohl has responded with an explanation for the amount of time spent in the identified examples. *See* Reply at 5-6. While Mr. Kohl's explanations are reasonable ones, as a general matter the amount of time he spent on this litigation is beyond what the undersigned would have expected. Rather than scrutinize each particular billing entry, however, the undersigned finds the better approach is to apply an 8% haircut to the time spent by Mr. Kohl to account for any excessive billing. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (discussing wide discretion for district court to provide a haircut to hours claimed). Such a haircut is sufficient to cure any excessiveness in relation to the work that he performed.

---

[5] The time sheets also reflect time spent by "SG," Docket No. 116 at 23-24, but there is no indication who that is or her position and qualifications. As such, the undersigned will not include that work in the lodestar. *Cf. Lewis v. Caesars Ent. Corp.*, 2019 WL 1571281, at 10 n.11 (D.Nev. Apr. 11, 2019), *adopted*, 2019 WL 1937564 (D. Nev. Apr. 30, 2019).

[6] Mr. Kohl's papers do not provide a total number of hours, or even a subtotal of hours for each billing statement. By the undersigned's calculation, it appears that he billed 388.6 hours.

1  Given the above, the undersigned will calculate the lodestar by crediting 357.5 hours for
2  Mr. Kohl and 2.4 hours for Mr. Villamar.

3  B.  REASONABLE HOURLY RATE

4  Having determined the reasonable hours expended, the undersigned turns to the appropriate
5  hourly rate. Defendant does not challenge the rates of Mr. Kohl or Mr. Villamar, but the
6  undersigned will nonetheless review the reasonableness of the rates claimed. *See, e.g.*, *Gates*, 987
7  F.2d at 1401. Hourly rates for the lodestar are "calculated according to the prevailing market rates
8  in the relevant community," taking into account the rates for "similar services by lawyers of
9  reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96
10 & n.11 (1984). In cases involving Nevada law, the Court also considers the qualities of the
11 advocate, the character of the work done, the work actually performed by the lawyer, and the result.
12 *See Brunzell*, 445 P.2d at 33.

13 In this case, Mr. Kohl is a partner at his law firm with nearly a quarter century of legal
14 experience. *See* Kohl Decl. at ¶ 26. Considering that experience and the *Brunzell* factors, the
15 undersigned is satisfied that his hourly rate of $415 is appropriate here. *Cf. Crusher Designs, LLC*
16 *v. Atlas Copco Powercrusher GmbH*, 2015 WL 6163443, at *3 (D. Nev. Oct. 20, 2015) (awarding
17 hourly rate of $450 to partner with substantial litigation experience).

18 Mr. Villamar is an associate with substantial experience, who has a "reputation for
19 competency in business litigation." Kohl Decl. at ¶ 30. The undersigned is mindful that Mr.
20 Villamar's requested hourly rate of $325 is above the prevailing rate in the community for
21 experienced associates. *See Crusher Designs*, 2015 WL 6163443, at *2. Moreover, this is not a
22 complex business litigation, but rather a personal tort case. The undersigned does not find that
23 Mr. Villamar's experience or the application of the *Brunzell* factors justify an above-market hourly
24 rate. Instead, the undersigned finds an hourly rate of $250 to be appropriate.

25 C.  LODESTAR

26 In short, the undersigned finds that the lodestar is an appropriate method for determining
27 reasonable attorneys' fees in this case. Mr. Kohl reasonably expended 357.5 hours at a reasonable
28

hourly rate of $415. Mr. Villamar reasonably expended 2.4 hours at a reasonable hourly rate of $250. Accordingly, the amount of attorneys' fees that should be awarded is $148,962.50.[7]

## V.  CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that the motion to foreclose on an attorney be **GRANTED** in part and that Mr. Kohl's fees be awarded in the amount of $148,962.50 and his costs be awarded in the amount of $21,207.06.

Dated: June 17, 2019

_____
Nancy J. Koppe
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

---

[7] Mr. Kohl also seeks a judgment as to unpaid costs, which by the undersigned's calculation totals $26,207.06. *See* Kohl Decl. at ¶¶ 11-19. Defendant did make a payment of $5,000 in August 2018, *see* Docket No. 116 at 46, which the undersigned will account for by reducing the costs owed by that amount.